1  HANSON BRIDGETT LLP
   GARNER K. WENG, SBN 191462
2  gweng@hansonbridgett.com
   LAWRENCE M. CIRELLI, SBN 114710
3  lcirelli@hansonbridgett.com
   CHRISTOPHER S. WALTERS, SBN 267262
4  cwalters@hansonbridgett.com
   425 Market Street, 26th Floor
5  San Francisco, California 94105
   Telephone:    (415) 777-3200
6  Facsimile:    (415) 541-9366

7  Attorneys for Plaintiff and Counterdefendant
   Rocket Dog Brands, LLC

8

9               **UNITED STATES DISTRICT COURT**

10      **NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION**

11

12  ROCKET DOG BRANDS, LLC, a              CASE NO. C12-4643 SI
    Delaware limited liability company,
13                                         **ROCKET DOG BRANDS' OPPOSITION**
                Plaintiff,                 **TO GMI CORPORATION'S MOTION FOR**
14                                         **SUMMARY JUDGMENT**
          v.
15                                         Date:       September 6, 2013
    GMI CORPORATION, a New York            Time:       9:00 a.m.
16  corporation,                           Ctrm:       10, 19th Floor
                                           Judge:      Hon. Susan Y. Illston
17              Defendant.
                                           Trial Date:  February 3, 2014
18  _____
    GMI CORPORATION, a New York
19  corporation,

20              Counterclaimant,

21        v.

22  ROCKET DOG BRANDS, LLC, a
    Delaware limited liability company,
23
                Counterdefendant.
24

25

26

27

28

# **TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ................................................................................................ 1

II.     STATEMENT OF ISSUES ................................................................................. 2

III.    STATEMENT OF FACTS.................................................................................... 4

IV.     ARGUMENT ...................................................................................................... 6

        A.      There are disputed material facts regarding whether the contract
                provisions regarding "acceleration" were triggered, both regarding
                interpretation of the contract provisions and regarding the facts as to
                what happened, disallowing resolution of these issues at summary
                judgment. ............................................................................................... 7

                1.      There is a question of fact whether the term "payment
                        obligations" includes only royalty payments, as Defendant
                        contends, or also advertising payments. ............................................ 8

                2.      There are disputed material facts regarding the amounts of
                        royalty payments that Defendant was required to make, with
                        both the Amendment on its face and the course and conduct
                        of the parties contradicting Defendant's new interpretation of
                        its payment obligations. .................................................................. 10

                3.      There are disputed material facts regarding whether
                        Defendant's $78,000 payment, which was delivered to Rocket
                        Dog Brands on May 1, 2012, was timely. ......................................... 13

        B.      There are disputed material facts as to whether the contract
                provisions regarding "acceleration" are unenforceable as a matter of
                law, precluding summary judgment on this issue. ...................................... 15

        C.      There are disputed material facts regarding Defendant's claim that
                the parties waived all damages for breach under the contract, even
                direct damages; and accordingly, these issues cannot be resolved
                on a motion for summary judgment. ............................................................ 20

        D.      Finally, should Defendant attempt to introduce new arguments or
                new evidence on reply, such evidence should be disregarded and
                stricken. ................................................................................................... 23

V.      CONCLUSION .................................................................................................. 23

1

## **TABLE OF AUTHORITIES**

2

**Page**

3

4

## **CASES**

5

*Adams v. Napa Cantina Wineries, Inc.*
  94 F2d 694 (9th Cir. 1938) ............................................................................... 14

6

*Assurance Co. of Am. v. Premium Constr. Group, Inc.*
7 2012 U.S. Dist. LEXIS 53139 at \*5 (W.D. Wash. Apr. 16, 2012) .......................... 21

8

*Atel Financial Corp. v. Quaker Coal Co.*
  132 F. Supp. 2d 1233 (N.D. Cal. 2001) ........................................................ 19, 20

9

*Bank of Italy Nat'l Trust & Sav. Asso. v. Farmers' & Merchs' Nat'l Bank*
10 44 F.2d 325 (9th Cir. 1930) ............................................................................... 15

11

*Caminetti v. Pac. Mutual Life Ins. Co.*
  22 Cal.2d 344 (Cal. 1943) ................................................................................... 9

12

*Choice Hotels Int'l, Inc. v. Chewl's Hospitality, Inc.*
13 91 Fed. Appx. 810, 813 (4th Cir. 2003) (unpublished) ........................................ 17

14

*City of Pasadena v. AT&T Commc'ns*
  103 Cal. App. 4th 981 (Cal. App. 2002) ............................................................. 14

15

*City of Santa Clara v. Watkins*
16 984 F.2d 1008 (9th Cir. 1993) ............................................................................. 8

17

*Coleman v. Quaker Oats Co.*
  232 F.3d 1271 (9th Cir. 2000) ........................................................................... 23

18

*Coremetrics, Inc. v. AtomicPark.com, LLC*
19 2005 U.S. Dist. LEXIS 40484 at \*11-12 (N.D. Cal. December 7, 2005) ............... 20

20

*Cotton v. City of Eureka*
  860 F. Supp. 2d 999 (N.D. Cal. 2012) ............................................................... 23

21

*Days Inn Worldwide, Inc. v. BFC Management, Inc.*
22 544 F. Supp. 2d 401 (D.N.J. 2008) .................................................................... 17

23

*Edwards v. Symbolic Int'l, Inc.*
  2009 U.S. Dist. LEXIS 37523 at \*26-28 (S.D. Cal. Apr. 30, 2009) ................. 16, 17

24

*First Nat'l Mortg. Co. v. Fed. Realty Inv. Trust*
25 631 F.3d 1058 (9th Cir. 2011) ............................................................................. 7

26

*Hadley v. Baxendale*
  9 Ex. 341, 156 Eng. Rep. 145 (1854) ................................................................ 20

27

*Hartnell Community College Dist. v. Superior Court*
28 124 Cal. App. 4th 1443 (Cal. App. 2004) ........................................................... 12

ROCKET DOG OPP TO GMI'S MOTION FOR SUMMARY JUDGMENT

*Hathaway v. Davis*
   33 Cal. 161 (Cal. 1867) ................................................................................. 13

*In re Imperial Credit Indus, Inc.*
   527 F.3d 959 (9th Cir. 2008) ......................................................................... 12

*In re Rains*
   428 F.3d 893 (9th Cir. 2005) ......................................................................... 23

*In re: Geneva Tower Assocs. v. Eugene Burger Mgmt. Corp.*
   1996 U.S. Dist. LEXIS 14975 at *17 (N.D. Cal. Sept. 30, 1996) ........................... 11

*La Quinta Corporation v. Heartland Properties, LLC*
   603 F.3d 327 (6th Cir. 2010) ......................................................................... 17

*Lawrence v. Walzer & Gabrielson*
   207 Cal. App. 3d 1501 (Cal. App. 1989) ........................................................... 22

*Luckenbach v. W. J. McCahan Sugar Refining Co.*
   248 U.S. 139 (U.S. 1918) .............................................................................. 14

*Maron v. Foster Wheeler Corp.*
   2002 U.S. Dist. LEXIS 27548 at *8-11 (N.D. Cal. Jan. 16, 2002) ........................... 12

*Michel & Pfeffer v. Oceanside Properties, Inc.*
   61 Cal. App. 3d 433 (Cal. App. 1976) ............................................................... 20

*Mirpad, LLC v. California Ins. Guar. Ass'n*
   132 Cal. App. 4th 1058 (Cal. App. 2005) ............................................................ 9

*Nicoletti v. Bank of Los Banos*
   190 Cal. 637 (Cal. 1923) .............................................................................. 14

*Pacific Gas & Elec. Co. v. G. W. Thomas Drayage & Rigging. Co.*
   69 Cal.2d 33 (Cal. 1968) ................................................................................ 8

*Radisson Hotels Int'l, Inc. v. Majestic Towers, Inc.*
   488 F. Supp. 2d 953 (C.D. Cal. 2007) ...................................................... 15, 16, 19

*Ramada Franchise Sys., Inc. v. Motor Inn Inv. Corp.*
   755 F. Supp. 1570 (S.D. Ga. 1991) ................................................................. 19

*Scally* v. *Pacific Gas & Electric Co.*
   23 Cal.App.3d 806 (Cal. App. 1972) ................................................................ 22

*Tovar v. U.S. Postal Serv.*
   3 F.3d 1271 (9th Cir. 1993) ........................................................................... 23

*Travelodge Hotels, Inc. v. Elkinds Motel Assocs., Inc.*
   2005 WL 2656676 (D.N.J. Oct. 18, 2005) (unpublished) ..................................... 17

*Travelodge Hotels, Inc. v. Kim Shim Hospitality, Inc.*
   27 F. Supp. 2d 1377 (M.D. Fla. 1998) .............................................................. 19

*Villager Franchise Sys. v. Dhami, Dhami & Virk*
    2006 U.S. Dist. LEXIS 6114 at *31-32 (E.D. Cal. Jan. 26, 2006) .......................... 19

*Warner Bros. v. Curtis Mgmt. Group, Inc.*
    1993 U.S. Dist. LEXIS 21279 at * 25-26 (C.D. Cal. Mar. 30, 1993) ..................... 22

*Weber, Lipshie & Co. v. Christian*
    52 Cal. App. 4th 645 (Cal. App. 1997) ................................................ 15, 16, 17, 18

*Welles v. Turner Entm't Co.*
    503 F.3d 728 (9th Cir. 2007) ................................................................................ 12

*Whittlestone, Inc. v. Handi-Craft Co.*
    Case No. C 08-04193 SBA, 2012 U.S. Dist. LEXIS 128658 at *9 (N.D. Cal.
    Sept. 10, 2012) ......................................................................................... 6, 8, 15, 23

**STATUTES**

Cal. Civ. Code § 1478 .................................................................................................. 13

Cal. Civ. Code § 1638 .................................................................................................. 11

Cal. Civ. Code § 1671(b) ........................................................................................ 15, 17

Cal. Civ. Code § 3534 .................................................................................................. 22

Cal. Code Civ. Proc. § 1858 .......................................................................................... 9

**OTHER AUTHORITIES**

1 Witkin Sum. Cal. Law Contracts
    § 535 (10th ed. 2010) ................................................................................................ 16

*Black's Law Dictionary*
    445-446 (9th ed. 2009) ............................................................................................. 22

*Merriam-Webster.com*.
    Merriam-Webster, n.d. Web. 5 Aug. 2013 ............................................................. 14

The American Heritage® Dictionary of the English Language
    Fifth Edition 2011 ..................................................................................................... 14

Witkin, Summary of California Law
    § 503 (10th ed. 2005) ................................................................................................ 15

## I.      INTRODUCTION

In a motion for summary judgment where it bears the burden of showing there are no questions of material fact — in a case in which it has produced virtually no documents or substantive written responses relating to the issues raised in its motion, despite discovery having been propounded nearly three months ago[1] — Defendant GMI asks the Court to resolve, *as a matter of law,* numerous issues of contract interpretation and numerous issues of fact (such as whether and when a payment was made and whether the relationship between a clause and foreseeable damages was reasonable).

Indeed, many of Defendant's issues of contract interpretation and fact are interwoven, meaning it must successfully show no questions of fact through several successive issues in order to prevail on its argument. As an example, Defendant argues that, in a provision that was triggered by a "default in the timing of or otherwise regarding any of the Distributor's payment obligations," the term "payment obligations" refers only to royalty payments and not advertising-expenditure payments. To win on this, Defendant must show it is unreasonable as a matter of law to interpret "payment obligations" as including the advertising-expenditure payments — which are described in the contract using phrases such as "shall pay" and "due and payable."

Even if it were to win there, Defendant must then show it made all royalty payments timely. To do that, it must show that its interpretations of the timing-requirements described as "immediately" for one payment and "up through April 30, 2012" for another payment are the only reasonable interpretations as a matter of law; and then Defendant must show when and how it made its payments. Failing that, Defendant needs to win on its alternative argument, and it must show that it had a sufficient payment credit as of April 30, 2012. To do that, Defendant must first show that its alternative

---

[1] Should the Court not be prepared to deny the instant motion for summary judgment outright, Plaintiff and responding party Rocket Dog Brands has filed a motion under Federal Rule 56(d) on the same date as this opposition, seeking more time to conduct discovery before the Court's ruling on the motion for summary judgment.

1  method of calculating royalties due is the only reasonable interpretation as a matter of

2  law, although a section of the contract and the course and conduct of the parties

3  contradicts it. And even if Defendant succeeds there, it must show there are no disputed

4  facts regarding the entire history of payments owing and payments made that allegedly

5  result in the credit as of that date. Its attempt to do this is a summary chart of payments

6  apparently prepared by Defendant's attorney, attached to the attorney's declaration,

7  without any allegation of personal knowledge of the purported facts on the chart.

8          As Plan B, Defendant goes on to argue that the entire provision is an

9  unenforceable penalty. But California law presumes the validity of such provisions, and it

10  places the burden on Defendant to show that the provision has no "reasonable

11  relationship to the range of harm that might reasonably be anticipated." In trying to meet

12  this burden, Defendant presents no evidence whatsoever — only argument. In contrast,

13  Rocket Dog Brands presents evidence regarding the relationship between the provision

14  and the reasonably-anticipated harm, and discusses cases in which acceleration of

15  longer periods of future royalty payments have been upheld by courts.

16          There exist pure questions of laws in certain types of cases for which summary

17  judgment can be proper this early in a case, before completion of even early written

18  discovery, let alone depositions or expert work. Defendant's motion raises no such

19  situation. Rocket Dog Brands respectfully asks the Court to deny Defendant's motion.

20  **II.     STATEMENT OF ISSUES**

21          In a motion for summary judgment, the moving party bears the burden of
        demonstrating undisputed material facts, with the Court viewing any evidence in

22      the light most favorable to the non-moving party. Any question or dispute of fact
        precludes summary judgment.

23
        For an issue of contract interpretation, if a contract is capable of more than one

24      reasonable interpretation, it raises a question of intent — which is a question of
        fact precluding summary judgment.

25

26

27

28

ROCKET DOG OPP TO GMI'S MOTION FOR SUMMARY JUDGMENT

**A.     Was the "acceleration" clause of Section 3.1 of the Amendment triggered?**

Under the Amendment, Section 3.1's "acceleration" is triggered by "any default in the timing of or otherwise regarding any of the Distributor's payment obligations. . . ."[2]

1.     Defendant argues that the term "payment obligations" includes only royalty payments. Rocket Dog Brands maintains that the requirement that Defendant" shall pay to Rocket Dog Brands the difference between the required and actual [advertising] expenditures" is also a payment obligation. Is there a question of fact regarding what is included in "payment obligations"?

2.     If "payment obligations" includes the advertising expenditures obligation, Defendant has presented no evidence that it made any payments relating to advertising expenditures. Is there a question of fact whether Defendant has made any advertising-expenditure payments?

3.     Defendant argues that it made all of its royalty payments under the Amendment timely.

a.     One royalty payment was required "immediately upon the execution of this Amendment." Defendant made this payment about three weeks after the execution of the Amendment. Is there a question of fact whether this payment was timely?

b.     Another royalty payment was to be made "on or by October 31, 2011" with the right to extend "up through April 30, 2012." Defendant argues its scheduling a wire transfer at 4:45 p.m. on April 30, 2012 satisfied this deadline. Rocket Dog Brands notes that the Amendment provided that time was of the essence, the stated time was past the bank cut-off for wire transfers, and the transfer did not occur until May 1, 2012. Is there a question of fact whether this payment was timely?

c.     Defendant further argues its April 30 payment was timely because it had an existing credit from past payments, based on its novel way of calculating royalties.

(1)     Rocket Dog Brands notes that an example of the royalty calculation in the Amendment does not use Defendant's different way of calculation and that past invoices and exchanges between the parties did not use Defendant's different way of calculation. Is there a question of fact regarding the manner of calculating royalties?

(2)     Rocket Dog Brand further points out that the amount of

---

[2] *See* Amendment § 3.1(iii) (attached in unsigned form to Maroni Declaration in support of Defendant's motion for summary judgment).

Defendant's claimed credit would have been exhausted in partial payment of its overdue payment for advertising expenditures. Is there a question of fact whether Defendant had any credit (or how much) as of April 30?

**B.    If the "acceleration" clause of Section 3.1 of the Amendment was triggered (or raises a question of fact), is the clause unenforceable as a matter of law?**

Under California law, contractual provisions fixing damages are presumed valid, and a party seeking to invalidate such a provision must prove it was unreasonable at the time the contract was made. Defendant has introduced no evidence regarding the reasonableness of the provision, while Rocket Dog Brands presents evidence regarding its reasonable relationship to the types of harm that could be foreseen at the time of contract. Is there a question of fact whether the provision was reasonable at the time of contract?

**C.    Does Section 11.2 of the Agreement bar recovery of direct damages?**

Defendant argues that the Agreement's limitation-of-liability clause regarding "indirect, incidental, consequential, special, exemplary, punitive, or other form of damages" precludes all contract damages of any kind. A California statutory rule of interpretation mandates that a general term be limited to the same type and class of specific terms preceding the general term in a list, and Defendant concedes that it owes Rocket Dog Brands considerable monetary amounts. Is there a question of fact whether the provision precludes all contract damages?

## III.    STATEMENT OF FACTS

Rocket Dog Brands is the owner of several trademarks for its ROCKET DOG[®] word mark, design mark for its "running dog" logo, and combinations thereof.[3]  The company's rights in the Rocket Dog Marks (including through its predecessors-in-interest) date back at least as far as the mid-1990s, and it owns U.S. federal registrations for them in connection with footwear products, including Registration Nos. 2,128,627; 2,374,928; and 2,403,495.[4]  Rocket Dog Brands also owns registrations for the Rocket Dog Marks internationally.[5]  The Rocket Dog Marks are well-known in the footwear industry, Rocket Dog Brands' most-recognized trademarks, and an asset of considerable value to Rocket

---

[3] Declaration of Scott Briskie in support of Rocket Dog Brands Opposition to GMI Corporation's Motion for Summary Judgment ("Briskie Decl."), ¶ 2.
[4] *Id.*
[5] *Id.*

1  Dog Brands.[6]

2      Over time, Rocket Dog Brands' footwear products have generally been popular

3  among the public and profitable to the company.[7]  There was success and some growth

4  with a former licensee, Elan-Polo, Inc., although Rocket Dog Brands felt that there was

5  greater potential to achieve greater success with a better-positioned licensee.[8]  To that

6  end, in October, 2010 Rocket Dog Brands and Defendant entered into a Licensing and

7  Distribution Agreement ("Agreement").[9]  The Agreement made Defendant the licensee of

8  certain specified Rocket Dog Marks for men's and children's footwear within North

9  America and the European Union, beginning January 1, 2011.[10]  All told, it took at least

10  nine months for Rocket Dog Brands to recruit Defendant, come to terms with it, and see

11  the Agreement become effective.[11]

12      In the period from the beginning of the Agreement to the fall of 2011, Defendant

13  made many statements and did many things that made Rocket Dog Brands concerned

14  about Defendant's intentions and abilities to fulfill its obligations under the Agreement.[12]

15  Among other things, Defendant was not making its required royalty payments and was

16  not providing required sales and financial reporting to Rocket Dog Brands.[13]  As an

17  accommodation to Defendant, the Rocket Dog Brands began discussing an amendment

18  to the Agreement in Fall 2011.[14]  The parties eventually agreed to an extended royalty

19  payment schedule in a November 22, 2011 written amendment ("Amendment").[15]

20      Even though Defendant agreed that time was of the essence in the Amendment,

21

22  _____

23  [6] *Id.*
24  [7] *Id.* at ¶ 3.
    [8] *Id.*
25  [9] *Id.*
    [10] *Id.*
26  [11] *Id.*
    [12] *Id.* at ¶ 4.
27  [13] *Id.* at ¶¶ 7, 10, 11, and 12.
    [14] *Id.* at ¶ 11, Exh. C.
28  [15] *Id.* at ¶¶ 13, 15.

1  Defendant did not make its scheduled royalty payment on or before April 30, 2012.[16]

2  Defendant also failed to make any required advertising payment to Rocket Dog Brands at

3  any time.[17]

4          Rocket Dog Brands gave Defendant notice of default on May 4, 2012 and invoked

5  its right to declare then-unpaid 2011 and 2012 minimum royalties immediately due and

6  payable because of Defendant's defaults in its payment obligations.[18]  Rocket Dog

7  Brands gave Defendant 45 days to cure its breaches.[19]  After sending the May 4, 2012

8  letter to Defendant, Rocket Dog Brands received no communications from Defendant

9  indicating that it was seeking to cure the stated breaches or offering to make any

10  payment, and Defendant made no further payment.[20]

11          After the Agreement ended, Rocket Dog Brands began diligently making plans to

12  continue in kid's and men's footwear products under the marks that Defendant had

13  licensed.[21]  It took approximately one year from the beginning of planning until the first

14  shipment of product in the kid's category went out, and Rocket Dog Brands has still not

15  managed to re-launch new product in the men's category.[22]

16  **IV.    ARGUMENT**

17          For its motion for summary judgment, Defendant and moving party GMI bears the

18  "burden of demonstrating the absence of a genuine issue of material fact for trial."[23]  The

19  Court "must view the evidence in the light most favorable to the non-moving party and

20  draw all justifiable inferences in its favor"[24]:

21          Credibility determinations, the weighing of the evidence, and the drawing of
             legitimate inferences from the facts are jury functions, not those of a judge . . .

22  _____

23  [16] *Id.* at ¶ 21.
24  [17] *Id.* at ¶ 20.
    [18] *Id.* at ¶ 24.
25  [19] *Id.*
    [20] *Id.*
26  [21] *Id.* at ¶ 25.
    [22] *Id.*
27  [23] *See, e.g.,Whittlestone, Inc. v. Handi-Craft Co.,* Case No. C 08-04193 SBA, 2012 U.S.
    Dist. LEXIS 128658 at *9 (N.D. Cal. Sept. 10, 2012) (internal quotation marks omitted).
28  [24] *See, e.g., id.* at *10.

1    ruling on a motion for summary judgment.[25]

2   On issues of contract interpretation, as are raised here, the Court may grant summary

3   judgment only if there is no reasonable interpretation other than the one advanced by the

4   moving party:

5        If a contract is capable of two different reasonable interpretations, the contract is
         ambiguous. In contract cases, summary judgment is appropriate only if the
6        contract or contract provision is unambiguous. . . . The rationale for this
         proposition is simple: ***ambiguity in a contract raises a question of intent,***
7        ***which is a fact question precluding summary judgment.***[26]

8   In turn, conflicting extrinsic evidence regarding the meaning of a contract term or

9   provision indicates a question of fact precluding summary judgment.[27]

10       **A.    There are disputed material facts regarding whether the contract
                provisions regarding "acceleration" were triggered, both regarding
11              interpretation of the contract provisions and regarding the facts as to
                what happened, disallowing resolution of these issues at summary
12              judgment.**

13

14       The "accelerated royalties provision" about which Defendant argues in its motion is

    Section 3.1 of the Amendment (with the Amendment provision creating the new Section
15
    5.1(b)(iii) of the Agreement); this states:
16
         Distributor acknowledges and agrees that time is of the essence and that
17       Distributor's performance in the first year of the Term and its performance in the
         second year of the Term were and are each material considerations for Rocket
18       Dog Brands entering into this Agreement. In the event of any default in the timing
         of or otherwise regarding any of Distributor's payment obligations in the first year
19       of the Term or the second year of the Term, Rocket Dog Brands may, without
         notice or demand, declare the entire aggregate Minimum Royalties for the first
20       year and second year of the Term then unpaid immediately due and payable.

21

22

23   _____

24   [25] *Id.* (internal quotation marks and citations omitted) (ellipses in original).
     [26] *See, e.g., id.* at *13 (internal quotation marks and citations omitted).
25   [27] *See, e.g., id.* at *24-*25 (citing numerous cases: "*First Nat'l Mortg. Co. v. Fed. Realty
     Inv. Trust,* 631 F.3d 1058, 1067 (9th Cir. 2011) (if conflicting extrinsic evidence supports
26   different interpretations of ambiguous contractual language, this poses a question of fact
     not amenable to summary judgment); *Miller,* 454 F.3d at 990 (if the interpretation of
27   contractual language turns upon the credibility of conflicting extrinsic evidence, or if
     construing the evidence in the nonmovant's favor, the ambiguity can be resolved
28   consistent with the nonmovant's position, summary judgment is inappropriate).")

1.   *There is a question of fact whether the term "payment obligations" includes only royalty payments, as Defendant contends, or also advertising payments.*

The parties dispute the meaning of the term "payment obligations" as used in the Amendment's acceleration provision.  In California, "the intention of the parties as expressed in the contract is the source of contractual rights and duties."[28]  Where parties disagree about the meaning of a contract, "[t]he threshold question in interpreting a contract or its provisions is 'whether the contested terms are ambiguous.'"[29]  Ambiguity may be apparent on the face of the contract or may be introduced by extrinsic evidence of the parties' intent.[30]  A contract is ambiguous if it is capable of two different reasonable interpretations.[31]  Where differing interpretations are urged, "rational interpretation requires at least a preliminary consideration of all credible evidence offered to prove the intention of the parties."[32]

Defendant asserts that "payment obligations" cannot mean anything except royalty payments. Rocket Dog Brands contends that "payment obligations" unambiguously contemplates <u>all</u> payment obligations Defendant agreed to take on, including those relating to advertising payments. Defendant's claim ignores the plain language of the Amendment itself and disputed material facts about what that term means.

First, the plain language is at most ambiguous as to whether "payment obligations" means solely royalty payments.  While Defendant places a lot of stock on a heading titled, "Royalties," Section 5 of the Amendment expressly incorporated Section 15 of the Agreement, including its provision that:

> Section, paragraph and other captions or headings contained in this Agreement are used as a matter of convenience and for reference only, and in no way define, limit, extend or otherwise describe the scope or intent of this Agreement or any

---

[28] *Pacific Gas & Elec. Co. v. G. W. Thomas Drayage & Rigging. Co.*, 69 Cal.2d 33, 38 (Cal. 1968)
[29] *Whittlestone, supra*, 2012 U.S. Dist. LEXIS 128658 at *12 (quoting *City of Santa Clara v. Watkins,* 984 F.2d 1008, 1012 (9th Cir. 1993).
[30] *Id.*
[31] *Id.* at 13.
[32] *Pacific Gas & Elec.*, *supra*, 69 Cal.2d at 39-40.

provision hereof and shall not affect in any way the meaning or interpretation of this Agreement.[33]

This in mind, we look at the language itself, not the heading; and fundamentally, the parties did not choose to tie the acceleration provision to "royalties" or "royalty payments."[34]  Instead they used the broader term "payment obligations."  The terms "royalty" or "royalties" appear at least 15 times in Section 3.1 of the Amendment, yet the parties chose instead to tie the acceleration provision to "payment obligations."[35]

There are two types of payment obligations that Defendant agreed to take on. One is royalties. The second is payments to Rocket Dog Brands to make up for advertising expenditures that Defendant was required to make but did not.[36]  Thus, there is no reason to use "payment obligations" if the parties had intended to refer only to royalty payments. Moreover, the Amendment uses the term "payment obligations" twice – once in the acceleration provision and again in the next clause, Section 3.2, which states that, "[f]or clarity, except as expressly stated in this Section 3 of this Amendment, <u>all payment obligations and all other obligations of [GMI] under the Original Agreement are unaffected</u>…."[37]  Defendant's motion for summary judgment **concedes** that "payment obligations" as used in Section 3.2 includes "any obligation related to advertising."[38]  Defendant's argument that "payment obligations" means only royalty payments as used

---

[33] *See* Amendment § 5, Agreement § 15.8 (attached in unsigned form to Maroni Declaration in support of motion for summary judgment).
[34] *See* Amendment § 3.1(iii)).
[35] *See id.*; Cal. Code Civ. Proc. § 1858 ("…where there are several provisions or particular, such a construction is, if possible, to be adopted as will give effect to all.")
[36] Agreement § 4.4 states that during each year of the contract, GMI "agrees to spend a sum not less than 2% of Net Sales in that year…on Advertising Expenditures. In the event [GMI] fails to meet its required Advertising Expenditure requirement in any given year, [GMI] shall **pay** to Rocket Dog Brands the difference between the required and actual expenditures, due and payable no later than 60 days after the end of each calendar year in which there is a shortfall.").
[37] *See* Amendment § 3.2); *Mirpad, LLC v. California Ins. Guar. Ass'n*, 132 Cal. App. 4th 1058, 1069 (Cal. App. 2005) ("'Words used in a certain sense in one part of an instrument are deemed to have been used in the same sense in another.'") (quoting *Caminetti v. Pac. Mutual Life Ins. Co.*, 22 Cal.2d 344, 358 (Cal. 1943)).
[38] GMI's MSJ at p. 12:18-23 ("the rest of the original Agreement – including any obligation relating to advertising – is untouched and unaffected by the Amendment." (citing Section 3.2 of the Amendment)).

in Section 3.1(iii), but includes advertising payments as used in Section 3.2, demonstrates the questions of fact about the parties' intent.

Second, not only does the contract on its face contradict Defendant's proposed interpretation, there is further evidence that shows how the parties interpreted "payment obligations" in their course and conduct; among other things, in early 2012, Rocket Dog Brands advised Defendant that it considered the "payment obligations" term in the Amendment to refer to "all payment obligations" including advertising expenditures[39] — and Defendant did not respond to challenge or in any way disagree with this.[40]

The foregoing evidence establishes the parties' mutual understanding that "payment obligations" as used in the Amendment included Defendant's advertising payment obligations. Defendant has presented no evidence on this point. The cases Defendant cites stand only for the proposition that parties may make their own contracts – they do not have any relevance to the current inquiry. Accordingly, the contract at a minimum raises a question of fact regarding Defendant's interpretation, precluding judgment as a matter of law in Defendant's favor.

      2.    *There are disputed material facts regarding the amounts of royalty payments that Defendant was required to make, with both the Amendment on its face and the course and conduct of the parties contradicting Defendant's new interpretation of its payment obligations.*

Defendant argues – again without citing any admissible evidence or any legal authority – that it somehow had a royalty "credit" throughout the parties' dealings.

For starters, Defendant's interpretation of the royalty calculations leads to a complex mathematical structure by which one must multiple by at least two fractions to get to the payment amount. Rocket Dog Brands' method – multiplying the stated percentage by the yearly minimum royalty – is more straightforward and sensible.

The Amendment itself also contradicts Defendant's argument that it had a royalty

---

[39] Briskie Decl. at ¶ 19.
[40] *Id.*

5251558.2

credit. For instance, Defendant claims that Section 3.1(i)(1) requires a royalty payment of $22,000, and that Defendant had a $25,000 royalty credit after making that payment.[41] But Section 3.1(i)(1), on its face, specifies that the $22,000 payment relates only to the royalty owed for January 1, 2011 through June 30, 2011.[42] Nothing in the Amendment gives Defendant the option of crediting it against later payments.  And if it were true, as Defendant posits, that Defendant had a $25,000 royalty credit after making the $22,000 payment, why would the parties have required Defendant to make a payment of $17,500, less than the purportedly existing credit, by April 30, 2012?  Defendant's interpretation would render the following section – requiring a royalty payment by April 30, 2012 – essentially meaningless.[43]

Apart from the Amendment itself, one fact alone demonstrates the absurdity of Defendant's stance: by Defendant's own admission, Defendant made a $78,000 "royalties payment" to Rocket Dog Brands on May 1, 2012.[44]  If Defendant owed only $17,500 or had a credit by April 30, 2012, as it now claims, why did it pay more than $70,000?  Defendant's own conduct belies the position that it takes now.[45]

Additional evidence that shows that the parties intended for Defendant to be making royalty payments in larger amounts than what Defendant now argues includes:

- Defendant had a royalty payment of at least $22,000 due by July 31, 2011,[46] but Defendant did not make this payment. Defendant orally informed Rocket Dog Brands on or about July 21, 2011 that it would not make the $22,000 royalty payment by July 31.[47]  Defendant never disputed

---

[41] GMI's MSJ at p. 9:2-5.
[42] Amendment § 3.1(i)(1) (the specified payments "Relat[e] specifically and only to the payments due under this Section…").
[43] Cal. Civ. Code § 1638 ("[t]he language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity.").
[44] Declaration of Stefano Maroni in support of GMI Corporation's Motion for Summary Judgment, Exh C.
[45] *In re: Geneva Tower Assocs. v. Eugene Burger Mgmt. Corp.*, 1996 U.S. Dist. LEXIS 14975 at *17 (N.D. Cal. Sept. 30, 1996) (the parties' conduct after entering into an agreement and before a dispute arises is given "great weight" in determining the parties' intent).
[46] Briskie Decl., ¶¶ 9-10.
[47] *Id.* at ¶ 10.

ROCKET DOG OPP TO GMI'S MOTION FOR SUMMARY JUDGMENT

that it owed a $22,000 royalty payment and did not claim to have a royalty credit by July 31.[48]

- Rocket Dog Brands issued invoices to Defendant for the sums different than what Defendant now claims were actually due, and Defendant did not dispute those amounts until now.[49]

- On October 14, 2011, Rocket Dog Brands wrote an e-mail to Defendant in which it indicated a willingness to discuss extending the due dates for Defendant's royalty payments and stated that a portion of Defendant's "current past due amount" would be due upon signing an amendment.[50] Defendant did not claim that it was then current in its royalty payments.[51]

- In negotiations for the Amendment, the parties discussed and agreed that 2011 minimum royalties would be paid according to a revised schedule, including with $70,000 to be paid no later than April 30, 2012 and $80,000 to be paid no later than June 30, 2012.[52]

- Defendant indicated in early April 2012 that it would be making a payment by the end of the month "as per the schedule" and did not claim to have a credit.[53]

The foregoing material facts demonstrate, at a minimum, the ambiguity of the contract terms regarding the amounts of royalty payments the parties intended Defendant would make, such that summary judgment is inappropriate.[54]  Defendant has also failed to show that the facts regarding the times at which it made payments are undisputed, as follows:

---

[48] *Id.*
[49] *Id.* at ¶9, Exh. B.
[50] *Id.* at ¶ 11, Exh. C.
[51] *Id.*
[52] *Id.* at ¶ 13.
[53] *Id.* at ¶21, Exh. E.
[54] *See In re Imperial Credit Indus, Inc.*, 527 F.3d 959, 966 (9th Cir. 2008) (Determining intent of contracting parties – and therefore the meaning of disputed terms – is largely factual question); *Welles v. Turner Entm't Co.*, 503 F.3d 728, 735 (9th Cir. 2007) (summary judgment improper where intent of contracting parties is at issue, in which case contract interpretation depends on the credibility of extrinsic evidence, which is a task for the jury); *Maron v. Foster Wheeler Corp.*, 2002 U.S. Dist. LEXIS 27548 at *8-11 (N.D. Cal. Jan. 16, 2002) (evidence of negotiations leading to contract formation may be relevant to meaning of disputed contract terms); *Hartnell Community College Dist. v. Superior Court,* 124 Cal. App. 4th 1443, 1451 (Cal. App. 2004) (if a contract term is ambiguous, its meaning depends on intent in light of earlier negotiations, later conduct, etc.).

ROCKET DOG OPP TO GMI'S MOTION FOR SUMMARY JUDGMENT

- The declaration of Defendant's attorney states that Defendant paid $38,000 "at execution of Agreement" in October 2010.[55]  Defendant's initial royalty payment was due on or before January 5, 2011,[56] but Rocket Dog Brands had not received the payment by January 13, 2011, and Defendant never claimed to have made the payment in a timely manner.[57]

- Defendant's attorney says that Defendant paid $22,000 "at execution of the Amended Agreement" on November 22, 2011.[58]  In fact, Defendant did not make this payment until December 12, 2011.[59]

- Defendant claims that it paid Rocket Dog Brands $78,000 on April 30, 2012, but payment was not delivered to Rocket Dog Brands until May 1, 2012.[60]

At a very minimum for the purposes of summary judgment, the Amendment is reasonably susceptible on its face to either party's asserted interpretation, and there are questions of fact precluding summary judgment.

> 3. *There are disputed material facts regarding whether Defendant's $78,000 payment, which was delivered to Rocket Dog Brands on May 1, 2012, was timely.*

In California, "payment" has long meant the "[p]erformance of an obligation for the delivery of money only…."[61]  In the absence of any expressed intention by the parties to have "payment" mean anything else (and Defendant offers no such evidence), Defendant's obligation to make a royalty "payment" under California law requires "delivery" to Rocket Dog Brands on or before its due date. By contrast, Defendant argues that its obligations to make payments were extinguished when it sent payment, and that

---

[55] Declaration of Sarah Barrows in support of GMI Corporation's Motion for Summary Judgment, Exh A. Rocket Dog Brands has objected to Ms. Barrows' table of purported payments because she lacks personal knowledge of GMI's performance, and Rocket Dog Brands asks that the exhibit be stricken.
[56] Briskie Decl., ¶ 7.
[57] *Id.* at ¶7, Exh. A.
[58] Barrows Decl., Exh. A.
[59] Briskie Decl., ¶16, Exh. D.
[60] *Id.* at ¶22, Exh. F.
[61] Cal. Civ. Code § 1478 (emphasis supplied); *see also Hathaway v. Davis,* 33 Cal. 161, 166 (Cal. 1867) ("What meaning would the unprofessional man give to the words in question? As to the word "payment," he would answer promptly: "it is the delivery of money by one person from whom it is due to another person to whom it is due….").

-13-

ROCKET DOG OPP TO GMI'S MOTION FOR SUMMARY JUDGMENT

1  the actual delivery of the funds to Rocket Dog Brands "is of no moment."[62]  Defendant

2  offers no evidence for its interpretation. Instead, it cites cases interpreting an obligation to

3  "remit" payment. These cases do not deal with a "payment" obligation, and are plainly

4  distinguishable.

5      Defendant's first case, *City of Pasadena v. AT&T Communications*, involved a

6  municipal tax ordinance creating an obligation to "remit" money, not a contract for

7  "payment" between private parties.[63]  The court's holding relies on the dictionary

8  definition of remit, which it explains means "send" and is an antonym of "receive."[64]  By

9  contrast, the dictionary definitions of "deliver" include "to take and hand over" and

10  "surrender"[65]; and "to bring or transport to the proper place or recipient" and "to surrender

11  to another.[66]  Thus, the meaning of "payment," which California defines to include

12  delivery, encompasses more than merely remitting it.

13      Defendant's second case, *Nicoletti v. Bank of Los Banos*, also addresses the

14  meaning of "remit," not "payment" or "delivery."[67]  Indeed, *Nicoletti* notes that "remit" as

15  used in standard authorities does "not involve the idea of delivery."[68]  Rather than

16  supporting Defendant, *Nicoletti* in fact contradicts its asserted interpretation that

17  "payment" means only "sending" or "remitting."

18      The idea that "payment" encompasses something more than merely sending it

19  finds support in several cases.[69]  The commercial bank that GMI used to make its wire

20  _____

21  [62] GMI's MSJ at p. 7:17-18; 7:27-8:1.

22  [63] *City of Pasadena v. AT&T Commc'ns*, 103 Cal. App. 4th 981, 984 (Cal. App. 2002).
   [64] *Id.* at 984-985.

23  [65] "Deliver." *Merriam-Webster.com*. Merriam-Webster, n.d. Web. 5 Aug. 2013.
   <http://www.merriam-webster.com/dictionary/deliver>.

24  [66] "Deliver." The American Heritage® Dictionary of the English Language, Fifth Edition
   2011. <http://www.ahdictionary.com/word/search.html?q=deliver>.

25  [67] *Nicoletti v. Bank of Los Banos*, 190 Cal. 637, 640 (Cal. 1923).
   [68] *Id.*

26  [69] *Luckenbach v. W. J. McCahan Sugar Refining Co.*, 248 U.S. 139, 149 (U.S. 1918)
   ("Whether the transfer of money or other thing shall operate as a payment, is ordinarily a

27  matter which is determined by the intention of the parties to the transaction."); *Adams v.
   Napa Cantina Wineries, Inc.*, 94 F2d 694, 699 (9th Cir. 1938) ("Stated in another way, the

28  rule is 'that the mere delivery of money or property by a stranger to an obligation does not
   (footnote continued)

ROCKET DOG OPP TO GMI'S MOTION FOR SUMMARY JUDGMENT

transfer has a well-published same-day wire transfer cutoff that comes before GMI submitted its transfer request,[70] and it is well known among companies that make payments via wire transfer that banks have published same-day transfer cutoffs.[71] Accordingly, the most reasonable interpretation of the requirement that Defendant make payments is that it requires more than simply sending money. At a minimum, for the purposes of summary judgment, there is a question of fact that precludes summary judgment.[72]

**B.     There are disputed material facts as to whether the contract provisions regarding "acceleration" are unenforceable as a matter of law, precluding summary judgment on this issue.**

In California, contractual provisions fixing damages for one party when another breaches its obligations are presumed to be valid.[73] The party seeking to invalidate one bears the burden of proving that it was unreasonable under the circumstances existing at the time the contract was made.[74]  This legislative preference arises out of a decades-old determination that "'liquidated damage provisions are useful and should be encouraged.'"[75]  A liquidated damages clause will be upheld so long as it "bear[s] a reasonable relationship to the range of harm that might reasonably be anticipated" at the time the contract was made[76]:

> Reasonableness is determined at the time the contract was made, not as it appears in retrospect; hence the amount of damages actually suffered is immaterial…[and] [a]ll the circumstances are considered in determining

---

discharge it in whole or in part, unless so provided by statute, or unless the delivery is received or accepted by the creditor as a payment on account of the debt or other obligation.'") (quoting *Bank of Italy Nat'l Trust & Sav. Asso. v. Farmers' & Merchs' Nat'l Bank*, 44 F.2d 325 (9th Cir. 1930)).
[70] *See* Request for Judicial Notice, filed herewith, Exhibit A.
[71] Briskie Decl., ¶23.
[72] *Whittlestone*, *supra*, 2012 U.S. Dist. LEXIS 128658 at *12-13 (contract may be ambiguous on its face, thereby precluding summary judgment).
[73] *Radisson Hotels Int'l, Inc. v. Majestic Towers, Inc.*, 488 F. Supp. 2d 953, 958-959 (C.D. Cal. 2007).
[74] Cal. Civ. Code § 1671(b); *Radisson*, *supra*, 488 F. Supp. 2d at 958-959.
[75] *Radisson, supra*, 488 F. Supp. 2d at 958 (quoting Witkin, Summary of California Law, § 503 (10th ed. 2005).
[76] *Weber, Lipshie & Co. v. Christian*, 52 Cal. App. 4th 645, 656 (Cal. App. 1997).

1    unreasonableness.[77]

2    "This standard permits a considerable degree of latitude in fixing the sum of liquidated

3    damages."[78]

4          Here, Defendant seeks to invalidate a clause that it agreed to after arms-length

5    contract negotiations. Yet, despite bearing the burden of proof, Defendant offers no

6    evidence that the it was unreasonable when it was made. Instead, Defendant simply

7    argues that Rocket Dog Brands' actual damages from Defendant's breach "would have

8    been *de minimis*, if anything."[79]

9          The instant clause states that:

10   Distributor acknowledges and agrees that time is of the essence and that
     Distributor's performance in the first year of the Term and its performance in the

11   second year of the Term were and are each material considerations for Rocket
     Dog Brands entering into this Agreement [Amendment]. In the event of any default

12   in the timing of or otherwise regarding any of Distributor's payment obligations in
     the first year of the Term or the second year of the Term, Rocket Dog Brands may,

13   without notice or demand, declare the entire aggregate Minimum Royalties for the
     first year and second year of the Term then unpaid immediately due and

14   payable.[80]

15         Faced with a similar situation recently, the *Radisson* court upheld a liquidated

16   damages provision because the hotel franchisee seeking to invalidate it offered no

17   evidence that the provision was unreasonable when made.[81]  The provision called for

18   payment of two years' worth of royalty payments, totaling just over $668,000, upon the

19   franchisee's default.[82]  Radisson, the trademark owner and franchisor, argued that two

20   years of royalty payments reasonably estimated its lost revenue while it searched for a

21

22   _____

23   [77] 1 Witkin Sum. Cal. Law Contracts § 535 (10th ed. 2010) (citations omitted); *Weber*,
     *supra*, 52 Cal. App. 4th at 657 (Actual damages suffered are irrelevant to court's

24   determination of whether provision was reasonable); *Edwards v. Symbolic Int'l, Inc.*, 2009
     U.S. Dist. LEXIS 37523 at *26-28 (S.D. Cal. Apr. 30, 2009).

25   [78] *Radisson, supra*, 488 F. Supp. 2d at 959.
     [79] GMI's Motion for Summary Judgment, Dkt. No. 49 ("GMI's MSJ"), at p. 11.

26   [80] Amendment § 3.1(iii) (attached in unsigned form to Declaration of Stefano Maroni in
     support of Motion for Summary Judgment).

27   [81] *Radisson, supra*, 488 F. Supp. 2d at 960.
     [82] *Id.* at 959.

28

1  replacement franchisee.[83]  The court held that it could not find the provision unreasonable

2  because:

> Defendants forget that they have the burden of demonstrating that the two year period is unreasonable under California law. The only evidence offered in this respect is Majestic's application to become a franchisee for Radisson. It was signed on July, 21, 2005, while the final contract was completed on October 26, 2005…. This evidence is simply insufficient. ***The fact that Radisson may have been able to find a new franchisee in less than two years on a single occasion does not permit this Court to conclude that the liquidated damages clause, which serves as an estimate of damages that would be accrued, is unreasonable***.[84]

8  And as other points of comparison, similar provisions requiring a payment of royalties

9  owing for the balance of a contract term have been upheld repeatedly throughout the

10  country, under various states' laws, including royalties for up 36 months in Maryland,[85] up

11  to 36 months in Wisconsin,[86] and up to 24 months in New Jersey.[87]

12      Here, Defendant offers only the unsupported *post-hoc* argument that Rocket Dog

13  Brands must have suffered little actual damages from Defendant's breach. Not only is

14  this disputed and untrue, Defendant's arguments about Rocket Dog Brands' actual

15  damages are not relevant to whether the parties' agreement was reasonable when it was

16  made.[88]  The fact that Defendant offers <u>no relevant evidence</u> on this point prevents

17  summary judgment.[89]

18      By contrast, Rocket Dog Brands' evidence demonstrates that the acceleration

19  clause was a reasonable estimate of the damages the parties anticipated might flow from

20

---

21  [83] *Id.*

22  [84] *Id.* at 960-961 (italics in original) (boldface emphasis supplied).
    [85] *See Choice Hotels Int'l, Inc. v. Chewl's Hospitality, Inc.*, 91 Fed. Appx. 810, 813 (4th

23  Cir. 2003) (unpublished).
    [86] *See La Quinta Corporation v. Heartland Properties, LLC,* 603 F.3d 327, 340 (6th Cir.

24  2010); *Days Inn Worldwide, Inc. v. BFC Management, Inc.,* 544 F. Supp. 2d 401, 406-07 (D.N.J. 2008).

25  [87] *See Travelodge Hotels, Inc. v. Elkinds Motel Assocs., Inc.,* 2005 WL 2656676 (D.N.J. Oct. 18, 2005) (unpublished).

26  [88] Cal. Civ. Code § 1671(b); *Weber, supra*, 52 Cal. App. 4th at 657; *Edwards, supra*, 2009 U.S. Dist. LEXIS 37523 at *26-28 ("'the amount of damages ***actually suffered has

27  no bearing*** on the validity of the liquidated damages provision'") (citation omitted, emphasis in original).

28  [89] *See id.*

Defendant's continuing failure to comply with its obligations. As courts have repeatedly

held, all of the circumstances existing at the time of the contract should be examined in

evaluating a clause fixing contractual liability.[90]  Here, such circumstances include at

least the following disputed material facts, which Defendant appears to overlook:

- Defendant was Rocket Dog Brands' <u>exclusive</u> licensee for its valuable ROCKET DOG trademarks throughout North America and the European Union;[91]

- The revenue streams guaranteed by Defendant were a significant portion of Rocket Dog Brands' projected budgets and profitability;[92]

- For Rocket Dog Brands to find a licensee to replace Defendant in the event of its default, and get a new licensee up and running, would take at least many months and potentially up to a year, during which time Rocket Dog Brands might not be seeing revenue from licensing its marks;[93]

- Defendant had not made <u>any</u> payment on time when the parties were negotiating the Amendment;[94]

- At the time of the Amendment, Defendant had not provided to Rocket Dog Brands any of the financial reporting required by the Agreement, leaving Rocket Dog Brands guessing as to Defendant's business and financial status when the liquidated damages clause was agreed upon, and making Rocket Dog Brands concerned about Defendant's future performance;[95]

Putting all of the above circumstances together, the parties negotiated the instant

clause – which, again, calls for an acceleration of <u>then-unpaid</u> 2011 and 2012 royalties –

at a time in their relationship when Defendant, the only entity allowed to use the ROCKET

DOG marks in North America and Europe, had failed to make any timely payments,

provide required financial information, and perform other contractual obligations. At that

time, Rocket Dog Brands held a justifiable belief that Defendant's performance might

continue to be sub-standard, and that Rocket Dog Brands may have to go through a

---

[90] *See Weber, supra*, 52 Cal. App. 4th at 654.
[91] Agreement § 2.2 ("During the Term, Distributor will be Rocket Dog Brands' exclusive distributor in the Territory….); Briskie Decl., ¶4.
[92] Briskie Decl. at ¶18.
[93] *Id.* at ¶4, 17, and 25.
[94] *Id.* at ¶7, 10, and 11.
[95] *Id.* at ¶12.

1   costly and time-consuming search for a replacement licensee. Furthermore, Defendant's

2   own counterclaim alleges that it spent "in excess of $618,000 to develop, market, and sell

3   Rocket Dog products."[96]  It would appear reasonable to anticipate Rocket Dog Brands or

4   a future licensee spending comparable amounts (*i.e.* royalties of $680,000) if Defendant

5   failed to perform. In this context, demanding that Defendant immediately pay royalties

6   that it had already agreed to pay, in the event of a payment breach, was a reasonable

7   estimate of the range of losses the parties might have anticipated at the time of the

8   Amendment.[97]

9         Several courts have upheld liquidated damages clauses under California law in the

10   similar context of franchisor/franchisee relationships, where payments are intended to

11   compensate the franchisor for lost revenues while searching for a replacement for a non-

12   performing franchisee.[98]  Here, Rocket Dog Brands, a licensor of valuable trademarks,

13   was not only faced with such damages, but also with difficult-to-anticipate future costs

14   based on potentially taking its brands in-house.[99]

15         The authorities Defendant relies on are inapposite to this case. Defendant cites six

16   cases, five of which are in the context of purely financial arrangements – with the extent

17   of contractual obligations being one party owing money to another in installments.[100]

18   Those types of contracts are far different than the exclusive trademark licensing deal that

19   Rocket Dog Brands and Defendant entered into, as illustrated by Rocket Dog Brands'

20   potential losses, discussed above. And *Atel Financial Corp. v. Quaker Coal Co.*, the case

---

[96] GMI Corporation's Answer to Complaint and Counterclaim, Dkt. No. 17, ¶60.
[97] *See Radisson, supra*, 488 F. Supp. 2d at 961.
[98] *See Travelodge Hotels, Inc. v. Kim Shim Hospitality, Inc.*, 27 F. Supp. 2d 1377 (M.D. Fla. 1998) (liquidated damages equating to five years of franchise payment reasonable for failure to make payments and pass inspections); *Ramada Franchise Sys., Inc. v. Motor Inn Inv. Corp.*, 755 F. Supp. 1570, 1578 (S.D. Ga. 1991) (liquidated damages reasonable because fixed at a percentage of anticipated revenues); *Villager Franchise Sys. v. Dhami, Dhami & Virk*, 2006 U.S. Dist. LEXIS 6114 at *31-32 (E.D. Cal. Jan. 26, 2006) (liquidated damages based on how long plaintiff takes to replace franchisee reasonable).
[99] *See* Briskie Decl., ¶25.
[100] In the order cited in GMI's brief, *Ridgley, Garrett, Greentree, Baypoint Mortgage, and Sybron* are all purely financial arrangements.

1   Defendant relies upon most heavily, is readily distinguishable. *Atel* found a clause

2   unenforceable where it provided for (1) acceleration of basic rents to be paid during the

3   remaining period of an equipment lease <u>and</u> (2) anticipated residual value of equipment

4   during lease term.[101] The court found it unreasonable because of the second term – the

5   full payment of anticipated residual value – and suggested that the acceleration of basic

6   rents would be reasonable standing alone.[102] On *Atel*'s reasoning, the instant clause

7   should be upheld because it requires only a pre-payment of future royalties.

8        Defendant's failure to provide <u>any evidence</u> that the instant clause was

9   unreasonable when made, and all of the above-stated disputed material facts going to

10   the reasonableness of the clause, each preclude summary judgment on this issue.

11       **C.**   **There are disputed material facts regarding Defendant's claim that the**
                **parties waived all damages for breach under the contract, even direct**

12                **damages; and accordingly, these issues cannot be resolved on a**
                **motion for summary judgment.**

13

14        In California, contractual limitations on liability are not enforceable unless the

15   parties' intent to limit an injured party's remedies is clearly expressed.[103] Clauses limiting

16   contractual liability have been construed to preclude special or indirect damages, but not

17   direct or general contract damages.[104] Other courts considering the enforceability of

18

19

---

20 [101] *Atel Financial Corp. v. Quaker Coal Co.*, 132 F. Supp. 2d 1233, 1241 (N.D. Cal. 2001).

21 [102] *Id.* at 1241-1242 (noting that the rental payment provision "begins to appear reasonable," but that "[t]he problem with the instant liquidated damages provision, is that

22 according to the literal terms of the contract, the anticipated residual value operates without regard to the post-default status of the equipment…").

23 [103] *Michel & Pfeffer v. Oceanside Properties, Inc.*, 61 Cal. App. 3d 433, 443 (Cal. App. 1976) (It is a "well-established rule that an intention to limit contractual remedies must be

24 clearly expressed.").

25 [104] *See Coremetrics, Inc. v. AtomicPark.com, LLC*, 2005 U.S. Dist. LEXIS 40484 at *11-12 (N.D. Cal. December 7, 2005) (holding that a limitation of liability clause precluding

26 any "lost profits" applied only to indirect damages, and citing the "longstanding and deeply-rooted rule of *Hadley v. Baxendale*, 9 Ex. 341, 156 Eng. Rep. 145 (1854), which

27 provides that recovery for breach of contract should compensate the non-breaching party for damages which naturally arise out of the breach and which were within the

28 reasonable contemplation of the parties at the time the contract was formed, *i.e.* direct damages.").

clauses limiting damages have reached the same conclusion.[105]  Defendant's motion fails because:

- the Agreement on its face limits only <u>indirect</u> and <u>exemplary</u> damages, or similar types of non-traditional damages;

- there are disputed material facts regarding the meaning of the limitation of liability clause; and

- even if the limitation of liability clause were unambiguous in the way Defendant claims, which it is not, Defendant concedes its liability to Rocket Dog Brands for breach of contract, such that it cannot be granted summary judgment on either of Rocket Dog Brands' claims.

Defendant argues that Section 11.2 of the Agreement precludes recovery of any contract damages, as a matter of law, except for royalties and advertising expenditures that Defendant concededly owed at the time Rocket Dog Brands terminated the Agreement.[106]  Defendant contends that it does not matter that Defendant committed several additional material breaches of the Agreement. This is because, according to Defendant, there can be no direct contract damages under Section 11.2, which provides as follows:

> EXCEPT AS PROVIDED IN THIS AGREEMENT IN CONNECTION WITH ANY OBLIGATIONS RELATING TO INSURANCE, DEFENSE, OR INDEMNIFICATION, UNDER NO CIRCUMSTANCES WHATSOEVER WILL THE PARTIES  BE LIABLE TO EACH OTHER FOR INDIRECT, INCIDENTAL, CONSEQUENTIAL, SPECIAL, EXEMPLARY, PUNITIVE, OR OTHER FORM OF DAMAGES … ARISING FROM ITS PERFORMANCE OR NON-PERFORMANCE PURSUANT TO ANY PROVISION OF THIS AGREEMENT, INCLUDING WITHOUT LIMITATION LOSS OF REVENUE OR ANTICIPATED PROFITS OR LOST BUSINESS…[107]

---

[105] *See Assurance Co. of Am. v. Premium Constr. Group, Inc.*, 2012 U.S. Dist. LEXIS 53139 at *5 (W.D. Wash. Apr. 16, 2012) (In Washington, "[a] court strictly construes exculpatory clauses and any exemption from liability must be clear if it is to be enforced.").

[106] GMI's MSJ at p. 15, fn. 8 ("To be clear, GMI does not contend that Section 11.2 abrogates any payment obligations expressly set forth in the Agreement that were due or owing prior to termination. Thus, as for minimum royalties or advertising expenditure payments <u>not made and owing to Rocket Dog</u> under the terms of the Agreement for 2011 and the first half of 2012…GMI has made an offer of judgment in those amounts under [Rule] 68.") GMI does not say what impact, if any, it believes its Rule 68 offer has on its motion.

[107] Agreement § 11.2 (attached in unsigned form as Exhibit ___ to Maroni Declaration in (footnote continued)

ROCKET DOG OPP TO GMI'S MOTION FOR SUMMARY JUDGMENT

The well-established interpretational canon of *ejusdem generis* precludes

Defendant's assertion. This canon – which is codified in California Civil Code section

3534 – states that:

> 'where general words follow the enumeration of particular classes of things, the general words will be construed as application only to things of the same general nature or class as those enumerated. The rule is based on the obvious reason that if the [writer] had intended the general words to be used in their unrestricted sense, [he or she] would not have mentioned the particular things or classes of things which would in that event become mere surplusage. The words 'other' or 'any other' following an enumeration of particular classes should be read therefore as other such like and to include only others of like kind or character.'[108]

Here, Defendant relies on the general term "or other form of damages," which is

preceded immediately by particular types of damages, namely "indirect, incidental,

consequential, special, exemplary, [and] punitive."  If Defendant were correct that "other

form of damages" precluded <u>any</u> direct contract damages, there would have been no

need for the parties to specify the types of damages they intended to preclude.[109]

Section 11.2 can be read only to preclude types of damages that are of like kind or

character with indirect, consequential, or exemplary damages,[110] and which are not

typically recoverable at common law, as contrasted with general or direct damages.[111]

Defendant is also precluded from summary judgment because it concedes that it is

liable to Rocket Dog Brands for some amount of damages regardless of Section 11.2.[112]

There are disputed material facts as to the amount of money Defendant owed for its

_____

support of Motion for Summary Judgment) (excerpted also in Exhibit __ hereto).
[108] *Lawrence v. Walzer & Gabrielson*, 207 Cal. App. 3d 1501, 1506 (Cal. App. 1989) ("or any other aspect of our attorney-client relationship" construed to be limited to immediately preceding specific financial disputes) (quoting *Scally* v. *Pacific Gas & Electric Co.*, 23 Cal.App.3d 806, 819 (Cal. App. 1972)); Cal. Civ. Code § 3534 ("Particular expressions qualify those which are general.").
[109] *See id.*
[110] *See id*; *see also Warner Bros. v. Curtis Mgmt. Group, Inc.*, 1993 U.S. Dist. LEXIS 21279 at * 25-26 (C.D. Cal. Mar. 30, 1993) (employing *ejusdem generis* to construe "or otherwise" term at end of specific list to be limited to the same types of media, such as acts, poses, plays, and appearances, specified in list.)
[111] *Black's Law Dictionary* 445-446 (9th ed. 2009) ("consequential damages" are "losses that do not flow directly and immediately from an injurious act but that result indirectly from the act. Also termed indirect damages."); *cf. id.* at 446 ("general damages," which are "damages that the law presumes follow from the type of wrong complained of.").
[112] GMI's MSJ at p. 15, fn. 8.

ROCKET DOG OPP TO GMI'S MOTION FOR SUMMARY JUDGMENT

1  failure to make royalty and advertising payments, as set forth above. Defendant has

2  presented no admissible evidence of what it owed Rocket Dog Brands. At a minimum,

3  even if Defendant were correct that general damages were precluded after termination of

4  the Agreement, there remain disputes of material fact as to the amounts owed by

5  Defendant pre-termination, meaning that Rocket Dog Brands must be allowed to proceed

6  to trial.

7        Defendant has not demonstrated that Section 11.2 prohibits Rocket Dog Brands

8  from collecting contract damages either on its face or based on any undisputed material

9  facts. Defendant's request that the Court grant summary judgment dismissing both of

10  Rocket Dog Brands' claims must be rejected.

11       **D.    Finally, should Defendant attempt to introduce new arguments or new evidence on reply, such evidence should be disregarded and stricken.**

12       Looking ahead, it is improper to raise arguments or present evidence for the first

13  time in a reply brief:

14

15  > Ordinarily, the Court does not consider new legal arguments or evidence presented in a reply brief. *In re Rains, 428 F.3d 893, 902 (9th Cir. 2005)*; see
16  > *Coleman v. Quaker Oats Co., 232 F.3d 1271, 1289 n. 4 (9th Cir. 2000)* ("[I]ssues cannot be raised for the first time in a reply brief."); *Tovar v. U.S. Postal Serv., 3*
17  > *F.3d 1271, 1273 n. 3 (9th Cir. 1993)* ("To the extent that the [reply] brief presents new information, it is improper. Therefore, [certain] portions of the brief are ordered stricken [.]").[113]

18

19  Accordingly, should Defendant seek to introduce new arguments or evidence in any reply

20  it may file, Rocket Dog Brands respectfully asks that it be disregarded and stricken.[114]

21  **V.    CONCLUSION**

22       On the significant issues on which it bears the burden of showing that there are no

23  disputes of material fact, Defendant GMI has offered scant evidence, evidence lacking

24  foundation, or no evidence. Instead of coming forward with evidence of the contract

25  ---

[113] *Whittlestone, Inc.*, *supra*, 2012 U.S. Dist. LEXIS 128658 at *21-*22 (internal quotation marks and brackets in original).

[114] *Cotton v. City of Eureka*, 860 F. Supp. 2d 999, 1022 n. 13 (N.D. Cal. 2012) ("The Court does not consider new arguments presented in a reply brief."); *Tovar, supra*, 3 F.3d at 1273 n. 3 (9th Cir. 1993) (striking portions of reply brief to the extent brief presented new information).

1   interpretations it urges, Defendant relies exclusively on the face of the Agreement and

2   Amendment, which, at best for Defendant, are ambiguous on the interpretations it

3   prefers. By contrast, Rocket Dog Brands has presented substantial evidence that both

4   parties, at the time of the contracts and subsequently through their conduct, intended

5   contract meanings different than those Defendant now puts forward. And Defendant has

6   offered no evidence – only argument – that an acceleration provision is unreasonable,

7   another matter on which Defendant bears the burden of proof, leaving Rocket Dog

8   Brands' evidence of reasonableness uncontradicted. Defendant has failed to meet its

9   burdens on all the issues it raises, and accordingly, Rocket Dog Brands asks the Court to

10  deny Defendant's motion in all respects.

11

12  DATED: August 9, 2013                    HANSON BRIDGETT LLP

13

14                                 By:_____/s/ Garner K. Weng_____
                                          GARNER K. WENG
15                                        LAWRENCE M. CIRELLI
                                          CHRISTOPHER S. WALTERS
16                                        Attorneys for Plaintiff and Counterdefendant
                                          Rocket Dog Brands, LLC
17

18

19

20

21

22

23

24

25

26

27

28

ROCKET DOG OPP TO GMI'S MOTION FOR SUMMARY JUDGMENT